STATE OF NORTH CAROLINA Ex REL. NORTH CAROLINA UTILITIES COMMISSION v. TRANSYLVANIA UTILITY COMPANY

No. 7610UC93

(Filed 4 August 1976)

Utilities Commission § 6— availability charge — power of Commission to disapprove

By enacting G.S. 62-133.1(b), the General Assembly proscribed the Utilities Commission's power to disapprove charges called for in uniform contracts between utilities and nonuser property owners if the charges do not exceed those expressly authorized by statute; therefore, the order of the Utilities Commission approving a rate

---

---

schedule which included a monthly availability charge of $3.00 per month while the uniform contract between the utility and property owner called for a $5.00 monthly charge is reversed, since $5.00 was also the sum of the minimum rate to user customers of the utility.

APPEAL by applicant from an order of the North Carolina Utilities Commission issued 1 July 1975. Heard in the Court of Appeals 12 May 1976.

The appeal stems from a proceeding filed 2 March 1973, in which applicant sought a franchise and approval of a rate schedule as a water and sewer utility. As finally approved, the rate schedule included a monthly "availability" charge of $3.00 per month for "nonusers" of water and a like amount for sewer. The applicant had previously entered into uniform contracts with nonusers calling for the payment of a minimum monthly "availability charge" of $5.00 for each service.

*Weaver, Noland & Anderson, by William Anderson, for applicant appellant.*

*Commission Attorney Edward B. Hipp and Assistant Commission Attorneys John R. Molm and Wilson B. Partin, Jr., for respondent appellees, North Carolina Utilities Commission.*

VAUGHN, Judge.

The thrust of appellant's argument is that the Commission did not follow the statutory rate making formula. The specific attack on the order is the reduction of the "availability" charge.

The concept of "availability" charges of water and sewer companies is of relatively recent origin. It appears to have arisen in instances where tracts of land were developed for recreational homes. Most all of the lots would be sold in a relatively short time, but few of the purchasers would immediately build on their lots. The practice has been for the developer and the purchasers of the lots, by uniform contract, to agree that the property owner would pay a fixed monthly sum prior to the time that the owner desired a tap connecting the waterwork system to his lot. Thereafter, the property owner became a customer of the utility and was required to pay the lawfully established rates charged by the utility.

The North Carolina Utilities Commission originally took the view that there was no "legal basis for allowing rates to

persons not actually receiving the service." *State of North Carolina, ex rel, Utilities Commission v. Carolina Forest Utilities, Inc.,* Docket No. W-361, 28 June 1973. On the appeal of that case to this Court, the Commission argued in its brief as follows:

> "The Commission agrees that it has jurisdiction to fix, establish or allow just and reasonable rates subject to certain limitations. GS 62-130 is a general grant of power. GS 62-133(a) establishes certain limitations to that general grant:

>> 'Sec 62-133. HOW RATES FIXED—(a) In fixing the rates for any public utility subject to the provisions of this chapter, other than motor carriers, the Commission shall fix such rates as shall be fair both to the public utility and *to the* CONSUMER.' (Emphasis added.)

> This provision directs the Commission to fix just and reasonable rates that shall be fair both to the public utility and to the CONSUMER. The legislature used the word 'consumer' as opposed to 'customer' or some other less descriptive word. Therefore, the Commission shall fix just and reasonable rates for consumers. There is no provision allowing the Commission to fix rates for nonconsumers or nonusers. Quite the contrary is true. There is an implied prohibition against fixing rates for anyone besides consumers. Appellant is not presently furnishing water to the lot owners against whom he seeks an availability charge since they have not actually tapped onto its line with their own plumbing whether it be residential or merely a yard faucet. Consequently, they are not consumers under the normal understanding of the word or the intention of the Legislature. A consumer is defined as one who uses or consumes economic goods and so diminishes or destroys their utilities. 9 Words and Phrases, 'Consumer,' P 12.

> The lot owners against whom appellant seeks to impose an 'availability charge' are not consuming or using up any commodity of the appellant. Therefore, the individuals against whom appellant seeks to impose an availability charge are clearly protected against such charge as they do not fall within the proper statutory bounds as provided in GS 62-133(a) for those against whom rates may be charged.

Neither are the nonusers or nonconsumers receiving a service furnished by a public utility as provided for in GS 62-3(27):

'Service' means any service furnished by a public utility, including any commodities furnished as a part of such service and any ancillary service or facility used in connection with such service.'

Appellant may be providing somewhat of a benefit to the nonusers; however, he is not providing any service or commodities to them so as to enable the Commission to classify them as consumers and levy a charge against them."

Thereafter, at its next session, House Bill 1491 was introduced in the General Assembly on 31 January 1974. The final version of that bill was ratified as Chapter 956 of the Session Laws of 1973, Second Session, 1974. That chapter, in pertinent part, is as follows:

"AN ACT ESTABLISHING GUIDELINES FOR ESTABLISHING CHARGES AND SETTING RATES OF WATER AND SEWER UTILITIES.

The General Assembly of North Carolina enacts:

Section 1. Paragraph (a) of Section 133 of Chapter 62 of the General Statutes of North Carolina is hereby amended by deleting the words 'other than motor carriers' and by adding in lieu thereof the words 'other than motor carriers and certain water and sewer utilities.'

Sec. 2. There is hereby added to Chapter 62 of the General Statutes of North Carolina a new section G.S. 62-133.1 which shall read as follows:

'§ 62-133.1. Small water and sewer utility rates.— (a) In fixing the rates for any water or sewer utility, the Commission may fix such rates on the ratio of the operating expenses to the operating revenues, such ratio to be determined by the Commission, unless the utility requests that such rates be fixed under G.S. 62-133(b). Nothing in this paragraph shall be held to extinguish any remedy or right not inconsistent herewith. This paragraph shall be in addition to other provisions of this Chapter which relate to public utilities generally, except that in cases of

conflict between such other provisions, this section shall prevail for water and sewer utilities.

(b) A water or sewer utility may enter into uniform contracts with non-users of its utility service within a specific subdivision or development for the payment by such non-users to the utility of a fee or charge for placing or maintaining lines or other facilities or otherwise making and keeping such utility's service available to such non-users; or such a utility may, by contract of assignment, receive the benefits and assume the obligations of uniform contracts entered into between the developers of subdivisions and the purchasers of lots in such subdivisions whereby such developer has contracted to make utility service available to lots in such subdivision and purchasers of such lots have contracted to pay a fee or charge for the availability of such utility service; provided, however, that the maximum non-user rate shall be as established by contract, except that the contractual charge to non-users of the utility service can never exceed the lawfully established minimum rate to user customers of the utility service.'

Sec. 3. Except as herein amended, the provisions of Chapter 62 of the General Statutes of North Carolina shall remain in full force and effect. To the extent that other laws or clauses of law are in conflict with the provisions of this act, such laws and clauses are, to that extent, hereby repealed."

The act is codified as G.S. 62-133.1.

It seems clear to us that the new statute was enacted in direct response to the Commission's conclusion that nonusers were not "consumers" of the utility and that an "availability charge" could not be made to property owners solely because they owned land in an area served by the utility.

The Utilities Commission exercises a function of the legislative branch of the government, but only that portion of the legislative power conferred upon it by legislative act. It may not act in an instance where the Legislature has, by specific legislation, preempted such action.

G.S. 62-133.1(b) expressly provides that a water or sewer utility may enter into uniform contracts with nonusers for payment by nonusers of a "fee or charge" for making the utili-

ties' service available to nonusers. The parties have stipulated that appellant's application for utility service together with the lot sales agreements into which they are incorporated "constitute . . . 'uniform contracts with nonusers . . .' within G.S. 67-133.1(b)." The act further expressly provides that the maximum nonuser rate "*shall* be as established by contract" but "can never exceed the *lawfully established minimum rate* to user customers of the utility service." (Emphasis added.) The uniform contract between the utility and property owner in the development calls for a $5.00 monthly charge and that sum is identical to the minimum rate to user customers of the utility.

By enacting the foregoing legislation, the General Assembly, we believe, proscribed the Commission's power to disapprove charges called for in uniform contracts between utilities and nonuser property owners if the charges do not exceed those expressly authorized by the statute. It appears to us that the foregoing result was the legislative intent at the time the legislation was ratified and made effective on 7 March 1974.

Subsequently, on 20 March 1974, this Court filed its opinion on the appeal from the Commission's order in Docket No. W-361, 28 June 1973. The opinion is reported in *Utilities Comm. v. Carolina Forest Utilities*, 21 N.C. App. 146, 203 S.E. 2d 410. The Court held that, under the statutes [as they existed prior to the enactment of G.S. 62-133.1] the Commission had authority to allow the use of an availability charge in a rate schedule of a water utility. The Court did not consider the act now in question and, because of its recent enactment, was most likely unaware of its existence.

In supplemental briefs, filed at the request of this Court, both parties to the appeal oppose our interpretation of G.S. 62-133.1 as set out in this opinion. We hold to the view, however, that the opinion reflects the legislative intent at the time the bill was enacted. If more careful reasoning calls for a change in the statute, that action should be left to the General Assembly.

The order of the Utilities Commission is reversed. The cause is remanded for reconsideration of the proposed rate schedule in accord with the views expressed in this opinion.

Reversed and remanded.

Judges MARTIN and CLARK concur.