**STATE ex rel. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.**

[104 N.C. App. 216 (1991)]

STATE OF NORTH CAROLINA ex rel. UTILITIES COMMISSION; PIED-
MONT NATURAL GAS COMPANY, INC. (Applicant); PUBLIC STAFF—
NORTH CAROLINA UTILITIES COMMISSION; and LACY H. THORN-
BURG, Attorney General v. CAROLINA UTILITY CUSTOMERS
ASSOCIATION, INC.

No. 9010UC1294

(Filed 1 October 1991)

**Gas § 1 (NCI3d)— order amending ratemaking formula—rates
lowered—CUCA not aggrieved party**

The Carolina Utility Customers Association was not an
"aggrieved" party which could appeal an order of the Utilities
Commission amending a ratemaking formula providing for an
adjustment of natural gas rates to pass cost savings to the
utility's customers when the utility purchases gas from non-
traditional sources, reducing the utility's rates, and permitting
the utility to file for subsequent increases to the extent
necessary to offset previous reductions under the order.

**Am Jur 2d, Public Utilities § 287.**

INTERVENOR-appellant appeals from 13 February 1990 order
of the North Carolina Utilities Commission. Heard in the Court
of Appeals 28 August 1991.

On 29 October 1985 Docket No. G-9, Sub 257, the Utilities
Commission adopted a ratemaking formula which authorized Pied-
mont Natural Gas Company, Inc. (Piedmont) to adjust its rates
to pass gas cost savings on to its customers when Piedmont pur-
chased gas from non-traditional sources. The formula was amended
in 1986, 1987, and 1988. On 8 February 1989 the Utilities Commis-
sion reconsidered and reapproved the formula in a general rate
case brought by Piedmont (Docket No. G-9, Sub 278). The Commis-
sion's 8 February 1989 order approving the formula was not appealed.

On 20 April 1989 Piedmont made a filing before the Utilities
Commission to amend the formula because of a Stipulation and
Agreement (Agreement) entered on 3 April 1989 between the Federal
Energy Regulatory Commission and Transcontinental Pipeline Cor-
poration (Transco), Piedmont's supplier. That Agreement provided
that Transco's customers, including Piedmont, would discontinue
purchasing gas under Transco's CD-2 Rate Schedule. The CD-2
rate schedule had previously been used to determine gas cost sav-

STATE EX REL. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[104 N.C. App. 216 (1991)]

ings. Gas cost savings were computed by subtracting Piedmont's actual cost of gas when purchased from non-traditional sources from the CD-2 rate schedule cost of gas. Because the CD-2 rate was no longer an appropriate measure to determine gas cost savings, Piedmont filed to amend the formula. In the same filing, Piedmont proposed to reduce its rates by $1.0159 per dekatherm, provided, that Piedmont could remove the cost reduction if and when its gas costs later increased.

The Utilities Commission entered an interim order on 3 May 1989 authorizing Piedmont to reduce its rates as requested. The Commission held a hearing on 12 December 1989, at which the intervenor-appellant, Carolina Utility Customers Association, Inc. (CUCA), cross-examined witnesses for Piedmont and the Public Staff. On 13 February 1990 the Commission entered an order amending the formula. The amendment allowed Piedmont to replace more expensive gas suppliers and to provide additional supplies of gas through increased pipeline capacity. It also required Piedmont to reduce its rates by $.25 per dekatherm in addition to the $1.0159 per dekatherm reduction placed into effect by the 3 May 1989 order.

CUCA appeals.

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Sam J. Ervin, IV, for intervenor-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Jerry W. Amos, for applicant-appellee.*

EAGLES, Judge.

CUCA argues that the Commission's 13 February 1990 order should be reversed *inter alia* because there were insufficient findings of fact and conclusions of law and because the order was issued outside a general rate making proceeding. However, we do not reach the issues CUCA raises because we hold that CUCA is not a party aggrieved by the order currently before us and as such has no standing to appeal from this order.

N.C. Gen. Stat. § 62-90 provides in pertinent part:

(a) Any party to a proceeding before the Commission may appeal from any final order or decision of the Commission within 30 days after the entry of such final order or decision, . . ., if the party aggrieved by such decision or order shall

STATE EX REL. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[104 N.C. App. 216 (1991)]

file with the Commission notice of appeal and exceptions which shall set forth specifically the ground or grounds on which the aggrieved party considers said decisions or order to be unlawful, unjust, unreasonable or unwarranted, and including errors alleged to have been committed by the Commission.

In order to have standing to appeal, a party must not only file notice of appeal within 30 days, but must also be aggrieved.

This court recently addressed the meaning of "aggrieved" in *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 102 N.C. App. 809, 403 S.E.2d 597 (1991). There we stated:

Under the Administrative Procedure Act, a "person aggrieved" is defined as "any person or group of persons of common interest directly or indirectly affected substantially in his or its person, property, or employment by an administrative decision." G.S. 150B-2(6). Under the Judicial Review Act, the predecessor to the Administrative Procedure Act, the Supreme Court said: "The expression 'person aggrieved' has no technical meaning. What it means depends on the circumstances involved." *In re Halifax Paper Co.*, 259 N.C. 589, 595, 131 S.E.2d 441, 446 (1963).

*Id.* at 812, 403 S.E.2d at 599. "Our Supreme Court has held that 'person aggrieved' means [one] 'adversely affected in respect of legal rights, or suffering from an infringement or denial of legal rights.' " (Citation omitted.) *In re Wheeler*, 85 N.C. App. 150, 153, 354 S.E.2d 374, 376 (1987). Where a party is not aggrieved by an order his appeal will be dismissed. *Compare Gaskins v. Blount*, 260 N.C. 191, 195, 132 S.E.2d 345, 347 (1963).

Here, CUCA has not shown that its interest in person, property, or employment has been substantially adversely affected, directly or indirectly. As Piedmont's brief correctly points out, Piedmont did not increase its rates under the 13 February 1990 order of the Commission. On the contrary, Piedmont *reduced* its rates by a total of $1.2659 per dekatherm.

CUCA contends, however, that they are an aggrieved party because the order would allow Piedmont to increase its rates in the future to the extent necessary to offset previous reductions under this order. We disagree. While under this order Piedmont may file, and in fact has filed to make subsequent increases, those proposed increases are not before us. The subsequent proposed

increases were effected through later filings in separate dockets which are subject to appellate review at an appropriate time. Those orders are not before us in this appeal.

Appeal dismissed.

Judges JOHNSON and PARKER concur.