STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION AND PUBLIC STAFF—NORTH CAROLINA UTILITIES COMMISSION v. CAROLINA UTILITY CUSTOMERS ASSOCIATION, INC. (APPELLANT), AND PIEDMONT NATURAL GAS COMPANY, INC. (APPLICANT-CROSS APPELLANT)

No. 9110UC203

(Filed 5 May 1992)

**Utilities Commission § 22 (NCI3d) — natural gas — increased costs — rate increase sought — general rate case required**

A Utilities Commission order which partially allowed a requested natural gas rate increase was reversed where the Commission in an earlier order allowed Piedmont Natural Gas Company to reduce its rates but provided that it could remove that rate reduction if its gas cost later increased, and the Commission in this order took judicial notice of its earlier order and allowed a portion of the increase pursuant to N.C.G.S. § 62-133(f). These filings by Piedmont reflect decisions by Piedmont's management to make fundamental changes in its sources of supply of natural gas and to access substantial additional volumes of natural gas. The rate changes generated by these decisions are simply not of the nature of those to be allowed under N.C.G.S. § 62-133(f), and must be considered in a general rate case.

**Am Jur 2d, Public Utilities § 242.**

APPEAL by Carolina Utility Customers Association, Inc. and cross-appeal by Piedmont Natural Gas Company, Inc. from the order

STATE ex rel. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[106 N.C. App. 218 (1992)]

of the North Carolina Utilities Commission entered in Docket Numbers G-9, Sub 300 and G-9, Sub 306 on 31 October 1990. Heard in the Court of Appeals 2 December 1991.

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Sam J. Ervin, IV, for intervenor-appellant Carolina Utility Customers Association, Inc.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Jerry W. Amos, for applicant-cross appellant Piedmont Natural Gas Company, Inc.*

WELLS, Judge.

The cases on appeal now before us had their genesis in a prior proceeding before the Utilities Commission in Docket Numbers G-9, Sub 289, G-9, Sub 291, and G-9, Sub 296. The combined proceedings in those dockets involved a hearing before the Commission in which appellant Carolina Utility Customers Association, Inc. (hereinafter CUCA) participated as an intervening party. Following that hearing, the Commission entered a lengthy order on 13 February 1990 in which it made and entered extensive findings of fact and conclusions of law and allowed cross-appellant Piedmont Natural Gas Company, Inc. (hereinafter Piedmont) to reduce its rates by $1.0159 per dekatherm, but provided that it could remove that rate reduction if its "gas cost" later increased.

The Commission's order of 13 February 1990 was appealed by CUCA to this Court. In *State ex rel. Utilities Commission v. CUCA*, 104 N.C. App. 216, 408 S.E.2d 876, *disc. review denied*, 330 N.C. 618, 412 S.E.2d 95 (1991), this Court found that because the order resulted in a reduction in rates, CUCA was not an "aggrieved party" within the meaning of G.S. § 62-90 and dismissed that appeal. We refer to that opinion to reflect the factual background which prompted Piedmont to initiate these proceedings. Our Supreme Court denied discretionary review, 330 N.C. 618, 412 S.E.2d 95 (1991).

In the proceedings now before us, Piedmont sought to increase its rates. In its response, CUCA sought a full-scale, general rate case hearing. The Commission denied CUCA's petition for an evidentiary hearing, and in its order of 31 October 1990, took judicial notice of its order of 13 February 1990, and on that basis allowed a portion of Piedmont's requested rate increase and denied a por-

STATE EX REL. UTILITIES COMM. v. CAROLINA UTILITY CUST. ASSN.

[106 N.C. App. 218 (1992)]

tion. Both CUCA and Piedmont have appealed from certain aspects of that order.

The fundamental and dispositive question presented in this appeal is whether these proceedings before the Commission should have been declared a general rate case pursuant to the provisions of G.S. § 62-133(b), (c), and (d), or, whether it was appropriate and lawful for the Commission to allow these proposed rate changes to be considered and passed upon in proceedings under G.S. § 62-133(f), which, in summary, authorizes the Commission to consider and pass upon natural gas companies' rate changes brought about by changes in the companies' wholesale cost of natural gas, in an expedited proceeding not involving the many facets of a general rate case.

The Commission considered and passed upon Piedmont's proposed rate changes in these dockets pursuant to the provisions of G.S. § 62-133(f). We hold that the Commission erred in its action and that its order in these dockets must be vacated.

No natural gas is produced in North Carolina. All the natural gas ultimately consumed in this State reaches our boundaries through the facilities of interstate natural gas pipelines, which either sell or transport gas to local gas utilities in this State. The rates charged by these interstate pipelines are regulated by the Federal Energy Regulatory Commission (FERC). In the late 1960's and early 1970's natural gas supplies in the United States became inadequate, uncertain, and unpredictable. These conditions resulted in volatile fluctuations in the rates and prices charged by pipelines and producers. North Carolina's natural gas distributors were being plagued by frequent changes in their wholesale cost of gas. In response to the problems associated with these circumstances, the General Assembly enacted G.S. § 62-133(f). See Ch. 1092, 1971 Session Laws. The purpose was to allow our local natural gas companies to react to these sudden and frequent changes in their wholesale cost of gas by using what might be referred to as expedited "flow-through" rate proceedings before our Utilities Commission.

Such is not the case here. These filings reflect decisions by Piedmont's management to make fundamental changes in its sources of supply of natural gas and to access substantial additional volumes of natural gas. While these decisions may be arguably laudable, having substantial long-range benefits for Piedmont's customers and the economy of this State, the rate changes generated by

these decisions are simply not of the nature of those to be allowed under G.S. § 62-133(f). The factors underlying Piedmont's application in these dockets—additional pipeline capacity, and alternative supply sources—are not distinguishable from those factors at issue in *State ex rel. Utilities Commission v. C.F. Industries, Inc.*, 39 N.C. App. 477, 250 S.E.2d 716 (1979), where we disapproved of and disallowed a G.S. § 62-133(f) rate change order and held that such rate changes must be considered and passed upon in a general rate case proceeding pursuant to G.S. § 62-133(a)-(e). Such is our decision here, and therefore the order of the Commission of 31 October 1990 under appeal must be and is

   Reversed and vacated.

Judges EAGLES and WALKER concur.