STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; AND DUKE ENERGY CORPORATION RESPONDENTS V. CAROLINA UTILITY CUSTOMERS ASSOCIATION, INC., PETITIONER

No. COA03-457

(Filed 17 February 2004)

**1. Utilities— rate freeze—newly passed legislation**

The Utilities Commission properly denied CUCA's petition to initiate a general rate case because the Legislature had frozen rates for a time after new legislation was passed; there was an exception for a utility that persistently and substantially earned more than its allowed rate of return during the freeze period; and CUCA's allegations were based on returns prior to the freeze period. N.C.G.S. § 62-133.6(e).

**2. Utilities— rates—no common law property interest**

There is no common law property interest in just and reasonable utility rates, and, even if such a property right existed, N.C.G.S. § 12-2 (repeal of a statute does not affect pending actions) would not apply in this case because no statute was repealed by the new legislation and temporary rate freeze. N.C.G.S. § 62-133.6.

Appeal by petitioner from orders entered 23 July 2002 and 17 October 2002 by the North Carolina Utilities Commission. Heard in the Court of Appeals 27 October 2003.

STATE ex rel. UTILS. COMM'N v. CAROLINA UTIL. CUSTOMERS ASS'N

[163 N.C. App. 46 (2004)]

*West Law Offices, P.C., by James P. West, for petitioner-appellant.*

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Karen E. Long, for respondent-appellee State of North Carolina ex rel. Utilities Commission.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by Clarence W. Walker and Kiran H. Mehta; Law Office of Robert W. Kaylor, P.A., by Robert W. Kaylor; William Larry Porter, Kodwo Ghartey-Tagoe and Paul R. Newton, for respondent-appellee, Duke Energy Corporation.*

HUNTER, Judge.

Carolina Utility Customers Association, Inc. ("CUCA") appeals an order of the North Carolina Utilities Commission ("the Commission") denying CUCA's petition to initiate a general rate proceeding and dismissing its complaint regarding unjust and unreasonable rates charged by Duke Power, a division of Duke Energy Corporation ("Duke"). For the reasons stated herein, we affirm.

CUCA is an association representing many of North Carolina's largest industrial manufacturers. On 12 June 2002, CUCA filed a verified petition and complaint against Duke alleging that Duke's base rates for electricity, particularly for CUCA's member base, were unjust and unreasonable. CUCA specifically alleged, *inter alia*, that (1) Duke artificially reduced its regulated earnings by amortizing asbestos expenses in a manner that was an exception to standard utility accounting practices, and (2) Duke's allowed rate of return, originally set in 1991, was too high for the current economic climate. CUCA supported its allegations by referencing an audit of Duke that was currently being conducted by Grant Thornton, L.L.P. as part of an investigation initiated by the Commission, the South Carolina Public Service Commission, and the North Carolina Public Staff "regarding Duke's alleged accounting improprieties." However, CUCA alleged that since the audit would only address "discrete accounting issues and discrepancies rather than all of the records that would be relevant to the setting of general rates[,]" the need for a comprehensive ratepayer review of Duke's records was necessary. Thus, CUCA petitioned the Commission to initiate a general rate case to remedy Duke's alleged overcharges.

While the petition and complaint were pending, clean smokestack legislation was enacted on 20 June 2002 as Section 62-133.6 of our

STATE ex rel. UTILS. COMM'N v. CAROLINA UTIL. CUSTOMERS ASS'N

[163 N.C. App. 46 (2004)]

statutes. Among other things, Section 62-133.6 declared the "base rates" of investor-owned public utilities, such as Duke, will remain unchanged from 20 June 2002 until 31 December 2007. Three days later, the Commission issued an order concluding that, pursuant to Section 62-133.6, there were no reasonable grounds by which to allow CUCA's complaint to proceed. CUCA's petition to initiate a general rate case against Duke was therefore denied by the Commission, but CUCA was afforded an opportunity to be heard as to that decision by filing comments or a motion for reconsideration.

On 9 August 2002, CUCA filed comments and a motion for reconsideration, which contended the Commission's "denial of the petition to initiate a general rate case and its tentative finding that there are no reasonable grounds to proceed upon CUCA's complaint both rest upon a misapprehension of applicable law." Specifically, CUCA argued (1) the subsequent enactment of Section 62-133.6 had no effect upon pending litigation, and (2) the "base rates" referred to in Section 62-133.6 represent "base fuel rates"; thus, as long as base fuel rates are not impacted, the initiation of either a general rate proceeding or a complaint proceeding should not be prohibited. Nevertheless, in an order dated 17 October 2002, the Commission denied reconsideration of its previous order and once again concluded there were "no reasonable grounds to proceed with a complaint proceeding." CUCA appeals.

At the outset, Chapter 62 of our statutes governs public utilities and establishes, in part, that any finding, determination, or order of the Commission is deemed "prima facie just and reasonable." N.C. Gen. Stat. § 62-94(e) (2003). Therefore, " '[j]udicial reversal of an order of the Utilities Commission is a serious matter for the reviewing court,' which may be justified only by strict adherence to the statutory guidelines governing appellate review." *State ex rel. Util. Comm'n v. Carolina Indus. Group*, 130 N.C. App. 636, 638, 503 S.E.2d 697, 699 (1998) (citation omitted). The applicable statute provides as follows:

(b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the sub-

stantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 62-94(b).

Additionally, Chapter 62 delegates rate making to the Commission. As stated by our Supreme Court:

In fixing rates to be charged by a public utility, the Commission is exercising a function of the legislative branch of the government. It may not, therefore, exceed the limitations imposed upon the Legislature by the State and Federal Constitutions. The Commission, however, does not have the full power of the Legislature but only that portion conferred upon it in G.S. Chapter 62. In fixing the rates to be charged by a public utility for its service, the Commission must, therefore, comply with the requirements of that chapter . . . .

*Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 336, 189 S.E.2d 705, 717 (1972).

[1] CUCA assigns error to the Commission's conclusion that a newly enacted section of Chapter 62, Section 62-133.6, precluded the initiation of a rate adjustment proceeding by petition and complaint against Duke. The enactment of Section 62-133.6 was an exercise by the Legislature of the power granted to it under the North Carolina Constitution to alter electricity rates for investor-owned utilities, such as Duke, for the next five years while the utilities seek to comply with new air emission standards. *See* N.C. Const. art. II, § 1; N.C. Gen. Stat. § 62-133.6 (2003). The pertinent subsection at issue in this appeal provides as follows:

(e) Notwithstanding G.S. 62-130(d) and G.S. 62-136(a), the base rates of the investor-owned public utilities shall remain

unchanged from the date on which this section becomes effective through December 31, 2007. The Commission may, however, consistent with the public interest:

> (1) Allow adjustments to base rates, or deferral of costs or revenues, due to one or more of the following conditions occurring during the rate freeze period:

>     . . . .

> d. The investor-owned public utility persistently earns a return substantially in excess of the rate of return established and found reasonable by the Commission in the investor-owned public utility's last general rate case.

N.C. Gen. Stat. § 62-133.6(e).

CUCA initially argues that despite the base rate freeze provision of Subsection 62-133.6(e), Subsection 62-133.6(h) still provides a statutory basis to proceed with its petition and complaint. Subsection 62.133.6(h) states "[n]othing in this section shall prohibit the Commission from taking any actions otherwise appropriate to enforce investor-owned public utility compliance with applicable statutes or Commission rules or to order any appropriate remedy for such noncompliance allowed by law." N.C. Gen. Stat. § 62.133.6(h). CUCA contends this subsection authorizes the Commission to take "any actions otherwise appropriate[,]" including the hearing of a complaint and the initiation of a general rate proceeding, in order to remedy a utility's noncompliance with applicable statutes and rules. We disagree.

" 'The cardinal principle of statutory construction is that the intent of the legislature is controlling.' " *Nationwide Mutual Ins. Co. v. Mabe*, 342 N.C. 482, 494, 467 S.E.2d 34, 41 (1996) (citation omitted). To ascertain our General Assembly's legislative intent, we look at " 'the phraseology of the statute [as well as] the nature and purpose of the act and the consequences which would follow its construction one way or the other.' " *Id.* Further, when reconciling statutes dealing with the same subject matter, they must be construed in *pari materia*, and harmonized, if possible, to give effect to each. *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 166 S.E.2d 663 (1969).

Subsection 62-133.6(e) plainly provides that base rate adjustments are allowed "during the rate freeze period" if "[t]he investor-

STATE ex rel. UTILS. COMM'N v. CAROLINA UTIL. CUSTOMERS ASS'N

[163 N.C. App. 46 (2004)]

owned public utility persistently earns a return substantially in excess of the rate of return established and found reasonable by the Commission" in the utility's last general rate case. By this subsection, it is clear that the excessive return must occur during the rate freeze period. When construed in *para materia* with Subsection 62-133.6(h)'s prohibition against the Commission taking "any actions otherwise appropriate[,]" the Commission would have the authority to issue fines for bad acts, issue orders to compel adequate service, and to do any number of acts which would be appropriate to regulate utilities. However, the Commission would not have the authority to make base rate adjustments contrary to Subsection 62-133.6(e) in the absence of evidence that the investor-owned public utility had persistently and substantially earned more than its allowed rate of return during the rate freeze period. Here, CUCA's petition and complaint were based on alleged excessive rate of returns by Duke that occurred prior to 20 June 2002. Even if true, CUCA's allegations do not address rates of return by Duke during the rate freeze period. Therefore, while the Commission may have done other acts to enforce Duke's compliance with applicable statutes and rules (acts which are disputed in *State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn. v. Duke Energy Corp.*, 163 N.C. App. 1, —— S.E.2d —— (No. COA03-440 filed 17 February 2004)), initiation of a general rate case was not such an act.

[2] Nevertheless, CUCA also argues that the Commission erred in denying CUCA's petition and dismissing its complaint because both were filed prior to the enactment of Section 62-133.6. Specifically, CUCA contends that it has a common law property interest to just and reasonable utilities rates; therefore, Section 12-2 of our statutes confirms that the existence of that property interest prevents subsequently enacted legislation from affecting CUCA's action. We disagree.

First, we have found no North Carolina case law recognizing the property interest alleged by CUCA in this appeal. On the contrary, our case law appears to suggest otherwise. *See State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 336 N.C. 657, 446 S.E.2d 332 (1994) (holding that the defendant customers association's interest in the supplier refunds used to fund the expansion of natural gas lines was nothing more than a mere expectation of receiving those refunds and not a property right). Second, assuming such a property interest did exist, Section 12-2 would still be inapplicable. Section 12-2 provides, in pertinent part, that "[t]he repeal of a statute shall not affect

any action brought before the repeal, for any forfeitures incurred, or for the recovery of any rights accruing under such statute." N.C. Gen. Stat. § 12-2 (2003). No statute was repealed by the enactment of Section 62-133.6 in the case *sub judice*. Subsection 62-133.6(e) simply allows the Legislature to preempt the Commission's ability to compel a general rate case by freezing rates until 31 December 2007, not completely revoking that ability. As stated by this Court in *Utilities Comm. v. Utility Co.*, 30 N.C. App. 336, 340, 226 S.E.2d 824, 826 (1976): "The Utilities Commission exercises a function of the legislative branch of the government, but only that portion of the legislative power conferred upon it by legislative act. It may not act in an instance where the Legislature has, by specific legislation, preempted such action." Thus, CUCA's second argument is without merit.

Accordingly, the Commission properly denied CUCA's petition to initiate a general rate proceeding against Duke and dismissed its complaint regarding unjust and unreasonable rates charged by the public utility.

Affirmed.

Chief Judge EAGLES and Judge GEER concur.

Chief Judge Eagles concurred in this case prior to 30 January 2004.