STATE OF NORTH CAROLINA, ex rel. Michael F. Easley, Attorney General of the State of North Carolina, Plaintiff-Appellee v. PHILIP MORRIS INCORPORATED, R.J. REYNOLDS TOBACCO COMPANY, BROWN & WILLIAMSON TOBACCO CORPORATION, individually and as successor by merger to The American Tobacco Company; LORILLARD TOBACCO COMPANY, LIGGETT GROUP, INC., UNITED STATES TOBACCO COMPANY, Defendant-Appellees, and E. MICHAEL LATTA, C. ROLAND YOUNG, TERESA W. YOUNG, DENNIS R. YOUNG, JAMES R. BURGIO, JOHN M. BYRNS, JR., GEORGE JONES and STEVE THOMPSON, Citizens and Taxpayers, for Themselves and All Others Similarly Situated, Intervenor Plaintiff-Appellants

No. COA00-445

(Filed 19 June 2001)

**1. Appeal and Error— preservation of issues—order dealing with intervention and sanctions—additional arguments not considered**

Additional arguments were not considered on appeal where the order appealed from dealt only with motions to intervene and sanctions.

**2. Parties— intervention—after final judgment**

The trial court did not abuse its discretion in an action which resulted in a trust to benefit tobacco growers and quota owners by finding that a motion to intervene was not timely where the intervenors failed to demonstrate the extraordinary and unusual circumstances or to make the strong showing of entitlement and justification necessary under case law to warrant granting a motion to intervene after a final judgment has been entered.

Judge GREENE concurring.

STATE ex rel. EASLEY v. PHILIP MORRIS, INC.

[144 N.C. App. 329 (2001)]

Appeal by intervenor plaintiffs from order entered 13 December 1999 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 24 April 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General James C. Gulick, for plaintiff-appellee.*

*Hunton & Williams, by A. Todd Brown, for defendant-appellees Philip Morris Incorporated, Brown & Williamson Tobacco Corporation (individually and as successor by merger to The American Tobacco Company), Lorillard Tobacco Company, and R.J. Reynolds Tobacco Company.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Urs R. Gsteiger, for defendant-appellee Liggett Group Inc.*

*Adams Kleemeier Hagan Hannah & Fouts, by Daniel W. Fouts and Peter G. Pappas, for defendant-appellee United States Tobacco Company.*

*Boyce & Isley, PLLC, by G. Eugene Boyce and Philip R. Isley, for intervenor plaintiff-appellants.*

McGEE, Judge.

Intervenor plaintiffs (intervenors) appeal the trial court's order denying intervenors' motion to intervene in the above-captioned case. For the reasons stated below, we affirm the trial court's order.

Plaintiff filed its complaint against defendants on 21 December 1998, seeking compensatory and injunctive relief for violations of Chapter 75 of the North Carolina General Statutes. Approximately an hour later, the trial court filed a Consent Decree and Final Judgment (Phase I) and an order dismissing with prejudice all plaintiff's claims against defendants. Among other forms of relief, Phase I directed the creation of a non-profit corporation to control fifty percent of all monies received under Phase I to benefit tobacco-dependent regions of North Carolina, subject to the North Carolina General Assembly's approval of the creation of the non-profit corporation prior to 15 March 1999. The trial court also retained jurisdiction over all future proceedings contemplated under Phase I.

On 15 March 1999, the trial court extended the deadline for the General Assembly to approve the creation of the non-profit corporation described in Phase I, and subsequently acknowledged legislative approval of the non-profit corporation on 19 March 1999. The trial

STATE ex rel. EASLEY v. PHILIP MORRIS, INC.

[144 N.C. App. 329 (2001)]

court formally approved the non-profit corporation as created by plaintiff on 9 July 1999.

The trial court entered a consent order on 19 August 1999 to create a private trust to benefit tobacco growers and quota owners in North Carolina and other states (Phase II) as part of its continuing jurisdiction under Phase I. The trial court approved the trust and retained jurisdiction to interpret, implement, administer and enforce the trust agreement.

On 4 November 1999, intervenors moved to intervene under N.C. Gen. Stat. § 1A-1, Rule 24 on behalf of all North Carolina taxpayers and simultaneously filed a complaint alleging numerous constitutional and statutory violations in the implementation of both Phase I and Phase II. Intervenors seek to have all monies disbursed under Phase I deposited directly into the State Treasury, and to have the private trust of Phase II be adjudged a "Common Fund for the benefit of such Class, Sub-Class or Classes of taxpayers and citizens of the State of North Carolina as may under all the circumstances be found entitled thereto by the Court, after due notice and opportunity to such persons and entities to be heard." Intervenors also moved for sanctions against plaintiff's attorneys on 17 November 1999 for failure to include the original summonses with the official court record and for statements made to the news media that intervenors' attorneys had moved to intervene solely "for the sake of a fee[.]"

Following a hearing, the trial court denied intervenors' motion to intervene on 13 December 1999. The trial court found that intervenors' motion was untimely because they had failed to show any acceptable justification for their delay in filing. The trial court further found that intervention would seriously prejudice and delay the rights of the original parties, and that the interests of intervenors and all citizens of North Carolina had been fairly represented and adequately served by plaintiff. The trial court also denied intervenors' motion for sanctions as moot. Intervenors appeal.

[1] As a preliminary matter, plaintiff moves to dismiss intervenors' appeal, or to strike portions of intervenors' brief and appendix, for violations of the North Carolina Rules of Appellate Procedure. *See Wiseman v. Wiseman*, 68 N.C. App. 252, 255, 314 S.E.2d 566, 567-68 (1984) ("The Rules of Appellate Procedure are mandatory and failure to follow the rules subjects an appeal to dismissal."). Plaintiff asserts that intervenors improperly argued matters not before this Court on appellate review and based those arguments on matters not in the

record, in violation of N.C.R. App. P. 9 and 28. Because the order appealed from deals only with intervenors' motions to intervene and for sanctions, we decline to consider any additional arguments raised by intervenors in their brief before this Court. *See* N.C.R. App. P. 3(d). However, plaintiff's motion to dismiss intervenors' appeal is denied pursuant to N.C.R. App. P. 2.

**[2]** N.C. Gen. Stat. § 1A-1, Rule 24 (1999) requires that an application to intervene be "timely." In *Procter v. City of Raleigh Bd. of Adjust.*, 133 N.C. App. 181, 183, 514 S.E.2d 745, 746 (1999) (citing *State Employees' Credit Union, Inc. v. Gentry*, 75 N.C. App. 260, 330 S.E.2d 645 (1985)), our Court stated:

> The question of whether an application to intervene is timely is left to the discretion of the trial court who will consider the following factors: (1) the status of the case, (2) the possibility of unfairness or prejudice to the existing parties, (3) the reason for the delay in moving for intervention, (4) the resulting prejudice to the applicant if the motion is denied, and (5) any unusual circumstances. In situations where a judgment has been entered, motions to intervene are granted only upon a finding of "extraordinary and unusual circumstances" or a "strong showing of entitlement and justification."

We therefore review for abuse of discretion the trial court's finding that intervenors' motion to intervene was untimely. "Appellate review of matters left to the discretion of the trial court is limited to a determination of whether there was a clear abuse of discretion." *Riviere v. Riviere*, 134 N.C. App. 302, 306, 517 S.E.2d 673, 676 (1999) (citing *White v. White*, 312 N.C. 770, 324 S.E.2d 829 (1985)).

> A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

*White* at 777, 324 S.E.2d at 833 (citation omitted).

In *Procter*, the petitioner sought a particular interpretation of a local zoning ordinance. At the petitioner's hearing before the respondent, the intervenors formally opposed the petitioner's interpretation. The respondent declined to adopt the petitioner's interpretation, and the petitioner appealed to the trial court. After a hearing,

IN THE COURT OF APPEALS                    333

STATE ex rel. EASLEY v. PHILIP MORRIS, INC.

[144 N.C. App. 329 (2001)]

the trial court announced its intention to adopt the petitioner's inter-
pretation. Upon learning that the respondent did not plan to appeal
the trial court's decision, the intervenors moved to intervene five days
after the trial court's announcement and the day before the trial court
entered its order. The trial court denied the motion as untimely.

Our Court reversed the *Procter* trial court holding that, due to the
unusual circumstances in the case, the intervenors' motion was
timely filed. We noted that the intervenors had been involved in the
ongoing proceedings and had made their opposition to the peti-
tioner's interpretation known. The respondent had represented the
intervenors' interests up until the respondent's decision not to appeal
the trial court's order. Upon learning of the respondent's decision not
to appeal, the intervenors acted in a timely manner by moving to
intervene in order to have standing to appeal.

In the present case, intervenors were not involved in the underly-
ing case. They assert in their motion to intervene that plaintiff has
failed to represent their interests throughout the process and since at
least Phase I. They acknowledge that information about the underly-
ing case has been widely available through the news media. Yet inter-
venors did not seek out counsel until 13 September 1999 and did not
file their motion to intervene until nearly two months later.
Intervenors' motion was ultimately filed more than ten months after
the order in Phase I was entered and seventy-seven days after the
entry of the order in Phase II.

Intervenors argue that the rule against intervening after final
judgment should not apply to them because it would be unreasonable
to require intervenors to have filed their motion during the single
hour between the filing of plaintiff's complaint and the entry of final
judgment. Furthermore, they argue that since they oppose not the set-
tlement but its post-judgment implementation, a post-judgment
motion to intervene is appropriate. Because the trial court has
retained jurisdiction over Phase I and Phase II, and because payments
have only recently begun and will continue for some twenty-five
years, intervenors contend that the resolution of the underlying case
is anything but "final" and therefore that their motion to intervene is
timely.

The trial court found that intervenors failed to justify their delay
in filing the motion to intervene. Intervenors contend that their delay
was reasonable in light of the incomplete court record in the under-
lying case. However, though intervenors seek to explain their delay

through the missing original summonses, they nonetheless filed their motion to intervene before the summonses had been found, suggesting that the inclusion of the summonses within the court record was not ultimately necessary to the filing of their motion.

The trial court also found that intervenors' intervention would seriously prejudice the interests of the original parties to the action. Intervenors argue that because payments are spread out over an extended period of time, a delay now will have minimal impact. Plaintiff, on the other hand, presented to the trial court an affidavit from then-Governor James B. Hunt, Jr. asserting that intervention would significantly prejudice the rights of plaintiff and of all those who would benefit under Phase I and Phase II.

Intervenors counter that denial of their motion to intervene would greatly prejudice them, in that denial of access to justice prejudices all citizens. Intervenors also assert that, if not blocked, any payments made under Phase II to out-of-state entities will be permanently lost to North Carolina taxpayers. Though intervenors acknowledge that they could proceed in separate, independent suits challenging the constitutionality of Phase I and Phase II payments, they argue that such an approach would be inefficient and wasteful as compared with a single definitive answer through the present case.

Finally, intervenors contend that numerous constitutional and procedural irregularities render the underlying case appropriate for intervention. Intervenors argue that the unusual circumstances throughout the case favor a finding that their motion to intervene was timely, although they fail to indicate how the various unusual circumstances they describe relate to the issue of timeliness.

After careful consideration of intervenors' arguments as to each of the factors under *Procter*, we conclude that the trial court did not abuse its discretion in finding untimely intervenors' motion to intervene. Intervenors have failed to demonstrate the "extraordinary and unusual circumstances" or to make the "strong showing of entitlement and justification" necessary under *State Employees' Credit Union* and *Procter* to warrant the granting of a motion to intervene after a final judgment has been entered. The trial court entered a final judgment in the present case more than ten months before intervenors filed their motion to intervene, and intervenors failed to present to the trial court an adequate excuse for their delay.

We affirm the trial court's order denying intervenors' motion to intervene. In addition, because intervenors are not parties to the

underlying case, we affirm the trial court's holding that intervenors' motion for sanctions is moot.

Affirmed.

Judge CAMPBELL concurs.

Judge GREENE concurs with a separate opinion.     .

GREENE, Judge, concurring.

I fully concur with the majority and write separately only to address intervenors' argument that its motion to intervene was timely because it was filed within seventy-seven days after the entry of the 19 August 1999 Consent Order (Phase II). Phase II was not the result of a new complaint; rather, it was a consequence of the single complaint filed by the State and, indeed, was contemplated in the 21 December 1998 Consent Decree and Final Judgment (Phase I). Thus, the timeliness of intervenors' motion must be judged in the context of Phase I. In that context, there was more than a ten-month delay in the filing of the motion to intervene, and I agree with the majority that intervenors have offered no acceptable excuse for the delay. Clearly, there is nothing to support a finding of extraordinary and unusual circumstances or a strong showing of justification for failure to request intervention sooner, *State Employees' Credit Union, Inc. v. Gentry*, 75 N.C. App. 260, 264, 330 S.E.2d 645, 648 (1985), the showing required when a party seeks to intervene after entry of judgment.