NO. COA13-880

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

IN THE MATTER OF

| | |
|---|---|
| INVESTIGATION REGARDING THE APPROVAL AND CLOSING OF THE BUSINESS COMBINATION OF DUKE ENERGY CORPORATION AND PROGRESS ENERGY, INC. | North Carolina Utilities Commission No. E-7, SUB 1017 |

Appeal by proposed intervenor from orders entered 13 July 2012, 12 December 2012, and 29 April 2013 by the North Carolina Utilities Commission. Heard in the Court of Appeals 11 December 2013.

> *No brief filed on behalf of appellee State of North Carolina ex rel. Utilities Commission.*
>
> *Chief Counsel Antoinette R. Wike for appellee Public Staff -- North Carolina Utilities Commission.*
>
> *Law Offices of F. Bryan Brice, Jr., by Matthew D. Quinn; and John D. Runkle, for proposed intervenor-appellant North Carolina Waste Awareness and Reduction Network, Inc.*
>
> *Womble Carlyle Sandridge & Rice, LLP, by James P. Cooney III; Allen Law Offices, PLLC, by Dwight W. Allen; and Duke Energy Corporation, by Deputy General Counsel Lawrence B. Somers, for appellees Duke Energy Corporation, Duke Energy Carolinas, LLC, and Duke Energy Progress, Inc. (formerly Carolina Power & Light Company d/b/a Progress Energy Carolinas, Inc.).*

GEER, Judge.

Proposed intervenor North Carolina Waste Awareness and Reduction Network, Inc. ("NC WARN") appealed two orders of the North Carolina Utilities Commission (1) denying NC WARN's motion to intervene in an investigation conducted by the Commission and (2) approving a settlement agreement by the parties to the investigation and closing the investigation. The Commission entered an order dismissing that appeal on the grounds that NC WARN lacked standing to appeal. NC WARN has appealed the dismissal order.

We hold that the Commission acted in excess of its jurisdictional authority in dismissing NC WARN's appeal for lack of standing, and we, therefore, vacate that order as void ab initio and address the merits of NC WARN's first appeal. We hold that the Commission properly denied NC WARN's motion to intervene and, therefore, affirm the order denying intervention. Since NC WARN was not a party to the Commission's investigation and had no standing to appeal from the settlement order, we also affirm that order.

## Facts

On 4 April 2011, Duke Energy Corporation and Progress Energy, Inc. filed an application requesting that the Commission approve their proposed merger (the "merger docket"). The companies indicated in the application that William D. Johnson

would be named president and CEO of the merged company ("Duke") for a three-year term.  Mr. Johnson filed written testimony in the merger docket stating he would be president and CEO of Duke, and James Rogers filed testimony stating he would be the executive chairman of Duke's board of directors.  On 29 June 2012, the Commission entered an order approving the merger subject to regulatory conditions and code of conduct.  Duke closed the merger on 2 July 2012.  The next day, on 3 July 2012, Duke announced that Mr. Rogers would replace Mr. Johnson as president and CEO of the company.

On 6 July 2012, the Commission opened an investigation, pursuant to N.C. Gen. Stat. § 62-37 (2011), into the change in leadership immediately following the merger.  NC WARN filed a motion to intervene in the investigation on 10 July 2012, alleging it was a non-profit corporation, with approximately 1,000 individual members, established for the purpose of "reduc[ing] hazards to public health and the environment from nuclear power and other polluting electricity production through energy efficiency and renewable energy resources."

The motion alleged that most of NC WARN's members resided in North Carolina and were customers of Duke, and its members were "concerned about the merger's potential impacts on the cost of their electricity."  NC WARN stated that it had intervened in

the merger docket, and that if allowed to intervene in the investigation, it would "assist and support the Commission." Attached to the intervention motion were NC WARN's "initial scoping comments to assist the Commission in defining the investigation."

On 13 July 2012, the Commission entered an order denying NC WARN's motion to intervene. The order explained that the proceeding was "an investigation pursuant to the Commission's supervisory authority under Article 3 of Chapter 62 [of the General Statutes], rather than an application or rate case being conducted pursuant to the Commission's authority under Article 4." The Commission also found that "NC WARN is not a party affected within the meaning of G.S. 62-37, requiring the Commission to 'make no order without affording the parties affected thereby notice and a hearing.'"

Relying on *State ex rel. Utils. Comm'n v. Carolina Util. Customers Ass'n*, 163 N.C. App. 1, 592 S.E.2d 277 (2004) (hereinafter "*CUCA*"), the Commission further found that its "order in this proceeding will have only a generalized effect on NC WARN's members, no more and no less than it will have on all of Duke's and Progress' ratepayers." In addition, the Public Staff of the North Carolina Utilities Commission ("Public Staff") and the Attorney General were parties to the

investigation, and the Commission found that those parties "represent the interest of all consumers who will be affected by the Commission's investigation."

On 29 November 2012, the Staff of the North Carolina Utilities Commission, the Public Staff, and Duke entered into a settlement agreement regarding the investigation. The agreement provided that Mr. Rogers, Mr. Johnson, and other individuals had testified before the Commission during the investigation; that Duke had filed thousands of pages of documents with the Commission pursuant to orders during the investigation; and that the parties desired to resolve "all matters and issues . . . without further litigation and expense and to move forward in a positive manner." The terms of the settlement agreement included that: (1) Duke maintain certain staff in Raleigh; (2) Duke create a board committee for regulatory compliance; (3) Duke provide retail ratepayers an "additional $25 million in fuel and fuel-related cost savings" and contribute "an additional $5 million to workforce development and low-income assistance," each on top of amounts provided for in the merger order; (4) Duke make certain executive-level staffing changes; (5) Duke bring in two new outside board members and retire current board members in a certain manner; (6) Mr. Rogers retire in December 2013 and the new top executive be hired from outside

the company; and (7) Duke "issue a statement of acknowledgement to the Commission that its activities have fallen short of the Commission's understanding of Duke's obligations under its regulatory compact that frame the duties for a regulated utility in this state."

Although denied intervention, NC WARN continued to file comments in the investigation docket during the investigation, and NC WARN filed a motion opposing the settlement agreement on 3 December 2012. The Commission entered an order approving the settlement agreement and closing the investigation on 12 December 2012. The order provided that the "integrity of the Commission to carry out its statutory mandate relies on the openness and honesty of the regulated public utilities . . . ." The order further provided, however, that the settlement agreement "restore[d] the balance between legacy Duke and legacy Progress in the merged company . . ., reaffirm[ed] the regulatory compact and continued public confidence in the integrity of utility regulation, and allow[ed] the merged company to focus on its mission to provide affordable, reliable electric service to North Carolina consumers."

On 9 January 2013, NC WARN timely appealed the intervention order and the settlement order. Prior to NC WARN's service of the proposed record on appeal, Duke filed a motion to dismiss NC

WARN's appeal with the Commission on 7 March 2013. The Commission entered an order dismissing NC WARN's appeal for lack of standing on 29 April 2013.

The majority of the Commission concluded that NC WARN had no right to intervene in the investigation under *CUCA*, and, as a non-party, NC WARN had no right to appeal. The majority further determined that it had jurisdiction to dismiss NC WARN's appeal for lack of standing. It reasoned that under N.C. Gen. Stat. § 62-90(c) (2011) and *Farm Credit Bank of Columbia v. Edwards*, 121 N.C. App. 72, 464 S.E.2d 305 (1995), the Commission retained certain jurisdiction over appealed orders until the appeal is docketed in the appellate court, including jurisdiction to dismiss an appeal by a non-party.

Commissioner ToNola D. Brown-Bland concurred in the result. Commissioner Brown-Bland reasoned that because the investigation was pursuant to the Commission's Article 3 powers and was wholly separate from the Commission's Article 4 judicial function, the only party affected by the investigation was necessarily Duke, the party investigated, since there was no assertion by any party during the investigation that the public's interests were not adequately protected. Accordingly, only Duke could appeal the settlement order. Commissioner Brown-Bland, like the majority, believed the Commission could dismiss NC WARN's

appeal, an appeal by an unaffected non-party, as a nullity, although she additionally concluded that the Commission could dismiss the appeal under Rule 25 of the Rules of Appellate Procedure.

Commissioner Bryan E. Beatty dissented because, while he agreed that the Commission properly denied NC WARN's intervention motion, he disagreed that the Commission had the authority to dismiss NC WARN's appeal from the intervention order. Commissioner Beatty reasoned that N.C. Gen. Stat. § 62-90(a) did not limit NC WARN, a non-party, from appealing since that statute was limited to a "'final order or decision'" and the intervention order was an interlocutory procedural order. He further reasoned that Rule 25 of the Rules of Appellate Procedure did not give the Commission authority to dismiss the appeal for lack of standing because that rule was limited to dismissals for failure to take timely action, and there was no allegation NC WARN had not timely taken and perfected its appeal.

Commissioner Beatty noted that, although the Commission properly exercised its discretion in denying NC WARN intervention, "the majority's decision to dismiss NC WARN's appeal of that ruling on that same basis gives the appearance that the majority is acting as an appellate court in affirming

its own exercise of discretion." Since Duke had cited no authority directly stating the Commission had the power to dismiss NC WARN's appeal from the intervention order, Commissioner Beatty "would follow the more cautious route and leave th[e] question to the appellate court."

On 16 May 2013, NC WARN timely appealed the order dismissing its first appeal and, in the same notice of appeal, again appealed the intervention order and settlement order. On the same day, 16 May 2013, NC WARN filed a petition for writ of certiorari in this Court seeking review of the order dismissing its first appeal. This Court entered an order denying NC WARN's petition on 4 June 2013. Duke filed a motion to dismiss NC WARN's second appeal in this Court on 7 August 2013.

I

We first address the Commission's order dismissing NC WARN's first appeal, including its appeal from the intervention order, for lack of standing. NC WARN argues, both in its brief and in response to Duke's motion to dismiss filed in this Court, that the Commission did not have jurisdiction to dismiss its first appeal for lack of standing. We agree.

In reviewing an order by the Commission, this Court "may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings;

or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are: (1) [i]n violation of constitutional provisions, or (2) [i]n excess of statutory authority or jurisdiction of the Commission, or (3) [m]ade upon unlawful proceedings, or (4) [a]ffected by other errors of law, or (5) [u]nsupported by competent, material and substantial evidence in view of the entire record as submitted, or (6) [a]rbitrary or capricious." N.C. Gen. Stat. § 62-94(b) (2013).

"The general rule is that an appeal takes the case out of the jurisdiction of the trial court. Thereafter, pending the appeal, the trial judge is *functus officio*." *Estrada v. Jaques*, 70 N.C. App. 627, 637, 321 S.E.2d 240, 247 (1984). This general rule is, however, "subject to two exceptions and one qualification[.]" *Id.*

> "The exceptions are that notwithstanding the pendency of an appeal the trial judge retains jurisdiction over the cause (1) during the session in which the judgment appealed from was rendered and (2) for the purpose of settling the case on appeal. The qualification to the general rule is that the trial judge, after notice and on proper showing, may adjudge the appeal has been abandoned and thereby regain jurisdiction of the cause."

*Id.* at 637-38, 321 S.E.2d at 247 (quoting *Bowen v. Hodge Motor Co.*, 292 N.C. 633, 635-36, 234 S.E.2d 748, 749 (1977)).

While it retains jurisdiction over an appealed matter, a trial tribunal may dismiss an appeal under the circumstances provided for in Rule 25 of the Rules of Appellate Procedure. Rule 25 provides in relevant part:

> (a) *Failure of appellant to take timely action*.  If after giving notice of appeal from any court, commission, or commissioner the appellant shall fail within the times allowed by these rules or by order of court to take any action required to present the appeal for decision, the appeal may on motion of any other party be dismissed. Prior to the filing of an appeal in an appellate court motions to dismiss are made to the court, commission, or commissioner from which appeal has been taken; after an appeal has been filed in an appellate court motions to dismiss are made to that court. Motions to dismiss shall be supported by affidavits or certified copies of docket entries which show the failure to take timely action or otherwise perfect the appeal, and shall be allowed unless compliance or a waiver thereof is shown on the record, or unless the appellee shall consent to action out of time, or unless the court for good cause shall permit the action to be taken out of time.

This Court interpreted the scope of Rule 25 in *Estrada*, where the trial court dismissed an appeal on the grounds that the appealed order was interlocutory.  70 N.C. App. at 639, 321 S.E.2d at 248.  The Court explained: "Taken out of context, the second sentence of the Rule might provide the trial court with

authority to dismiss interlocutory appeals. However, elementary principles of construction require that words and phrases be interpreted contextually and in harmony with the underlying purposes of the whole." *Id.* The Court reasoned: "The title and first and third sentences clearly indicate that the motions described in the second sentence are *only* those for failure to comply with the Rules of Appellate Procedure or with court orders requiring action to perfect the appeal." *Id.*

In *Estrada*, the plaintiff appealed "various orders" prior to final judgment being entered as to all claims and parties, and the trial court dismissed the plaintiff's appeal as interlocutory. *Id.* at 637, 321 S.E.2d at 247. This Court then reviewed on appeal whether the trial court had jurisdiction to dismiss the plaintiff's appeal. *Id.* This Court laid out the above rules for a trial court's continued jurisdiction over an appealed matter and determined that the exceptions and qualification did not apply. *Id.* at 638, 321 S.E.2d at 248. The Court concluded that, given its interpretation of Rule 25, the trial court did not have jurisdiction under Rule 25 to dismiss the appeal on the grounds that the appeal was interlocutory. *Id.* at 639, 321 S.E.2d at 248. Consequently, the Court held, the trial court "acted beyond [its] authority in dismissing the appeal." *Id.*

Here, there is similarly no contention that NC WARN abandoned its first appeal or that the order dismissing NC WARN's first appeal was in any way related to settling the record on appeal. However, with respect to the "exception" in which a trial court maintains jurisdiction over an appealed matter during the session in which the appealed order was rendered, the Commission's order provided that "[i]n contrast to a Superior Court judge, the Utilities Commission never loses jurisdiction over its cases before appeals are docketed in the appellate court due to termination of a term of court." The order cited N.C. Gen. Stat. § 62-90(c) in support of that distinction. *See id.* ("The Commission may on motion of any party to the proceeding or on its own motion set the exceptions to the final order upon which such appeal is based for further hearing before the Commission."). The Commission further reasoned that its jurisdiction over appealed orders was "more pervasive than the General Court of Justice, especially in its investigation determinations under Article 3."

The Commission's order additionally provided: "North Carolina recognizes an exception to the rule that a lower tribunal loses jurisdiction upon notice of appeal so as to permit the lower tribunal to modify its judgment *thereby also permitting it to retain jurisdiction to dismiss an appeal.*"

(Emphasis added.) In support of this latter proposition, the Commission cited *Farm Credit Bank* as support for its position that "[e]ven where the retention by the trial court of jurisdiction after notice of appeal may be circumscribed for settling the record on appeal, the courts have permitted the use of this limited jurisdiction to dismiss an appeal."

However, *Farm Credit Bank* does not stand for the proposition that simply because a trial tribunal retains jurisdiction over a matter in order to settle the record on appeal, the trial tribunal is empowered to dismiss the appeal for reasons *unrelated to* settling the record during that time. Rather, the *Farm Credit Bank* Court held that the trial court had jurisdiction over a motion to dismiss an appeal as being unauthorized because (1) that issue was expressly made an objection to the proposed record on appeal, (2) the plaintiff consented to the trial court addressing the matter, and (3) the plaintiff waived any objection to the jurisdictional issue by requesting affirmative relief from the trial court on other matters. 121 N.C. App. at 77, 464 S.E.2d at 307-08.

We note that *Farm Credit Bank*'s reasoning is directly contrary to the well-established principle that "[s]ubject matter jurisdiction 'cannot be conferred upon a court by consent, waiver or estoppel, and therefore failure to . . .

object to the jurisdiction is immaterial.'" *In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006) (quoting *In re Sauls*, 270 N.C. 180, 187, 154 S.E.2d 327, 333 (1967)). Nevertheless, the validity of the *Farm Credit Bank* Court's reasoning aside, that opinion's holding simply does not support the Commission's assertion that the Commission's continuing jurisdiction over certain matters, such as jurisdiction to hold a further hearing on exceptions set out in a notice of appeal under N.C. Gen. Stat. § 62-90(c), necessarily gives the Commission the authority to dismiss an appeal for reasons unrelated to the specific nature of that continued jurisdiction.

Moreover, the Commission's broad reading of *Farm Credit Bank* conflicts with the analysis in *Estrada*. In *Estrada*, the Court explained that since the session of the term of the appealed order had ended and there was no allegation that the plaintiff had abandoned the appeal or failed to timely take action with respect to the appeal, "the Superior Court had jurisdiction on [the day the defendants moved to dismiss the appeal] only for the purpose of settling the case on appeal." 70 N.C. App. at 638, 321 S.E.2d at 248.

The Court went on to hold that because the trial court's order dismissing the appeal as interlocutory had nothing to do with settling the record on appeal, the order went beyond the

court's authority. *Id.* at 638, 639, 321 S.E.2d at 248. Since *Farm Credit Bank* could not overrule *Estrada*, *see In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), we do not read *Farm Credit Bank* as providing a trial tribunal jurisdiction to dismiss an appeal during a time of continued jurisdiction for a reason unrelated to that continued jurisdiction apart from the trial tribunal's limited power to dismiss appeals as provided in Rule 25.

Thus, the Commission was correct that it had some continued jurisdiction over the orders at issue in NC WARN's first appeal, N.C. Gen. Stat. § 62-90(c). However, that continued jurisdiction allowed the Commission to dismiss NC WARN's appeal only based on the grounds specified in Rule 25.

We initially observe that because NC WARN's first appeal had not yet been docketed with this Court, Duke's motion to dismiss the appeal was properly made to the Commission. N.C.R. App. P. 25(a). *Estrada* held that Rule 25 gives a trial court authority to dismiss an appeal, prior to docketing in the appellate court, "*only* . . . for failure to comply with the Rules of Appellate Procedure or with court orders requiring action to perfect the appeal." 70 N.C. App. at 639, 321 S.E.2d at 248. There is no dispute in this case that NC WARN's first notice of appeal was timely filed, that NC WARN timely complied

with all appellate rules concerning its appeal, and that NC WARN properly perfected its appeal. Consequently, the Commission's order dismissing NC WARN's first appeal was not properly based upon Rule 25.

The Commission determined, however, that it nonetheless had jurisdiction to dismiss NC WARN's appeal under the rule stated by our Supreme Court in *State ex rel. Utils. Comm'n v. Edmisten*, 291 N.C. 361, 365, 230 S.E.2d 671, 674 (1976) that "an attempted appeal from a nonappealable order is a nullity and does not deprive the tribunal from which the appeal is taken of jurisdiction." That rule does not support the Commission's order, however, because the authority to ignore an appeal from a nonappealable order and proceed as if no appeal had been taken is not equivalent to authority to dismiss the appeal itself. In *Edmisten*, the Supreme Court held that the intervenor's appeal from a nonappealable order did not divest the Commission of jurisdiction over the appealed order, and, therefore, the Commission "was not deprived of authority later to modify this order." *Id.* Notably, however, the Commission in *Edmisten* did not attempt to dismiss the appeal, and it was this Court that held, in a different opinion, that the appealed order was interlocutory and, therefore, nonappealable. *Id.* at 363-64, 230 S.E.2d at 673.

Finally, the Commission's order was based on the reasoning that it could dismiss the appeal of any non-party to the proceeding, including NC WARN, since a non-party has no statutory right to appeal. This Court has, however, recognized a non-party's right to appeal from an order denying the non-party's motion to intervene, despite the fact that the non-party is, by virtue of the appealed order, not a party to the case. *See Procter v. City of Raleigh Bd. of Adjustment*, 133 N.C. App. 181, 184, 514 S.E.2d 745, 747 (1999) (holding proposed intervenors had standing to appeal order denying motion to intervene under Rule 24 of Rules of Civil Procedure, reversing intervention order, and remanding for entry of order allowing intervention). *See also State ex rel. Easley v. Philip Morris Inc.*, 144 N.C. App. 329, 334-35, 548 S.E.2d 781, 784 (2001) (reviewing merits of proposed intervenor's appeal from order denying motion to intervene and affirming denial of intervention).

If sustained, the Commission's position that it should be permitted to dismiss NC WARN's appeal from its order denying NC WARN's motion to intervene since NC WARN was a non-party would deprive NC WARN of appellate review of the denial of its motion to intervene. The Commission's decision would be insulated from review. We do not believe the General Assembly intended that

result. We, therefore, hold that the Commission exceeded its authority in dismissing NC WARN's appeal for lack of standing.

In *Estrada*, after holding that the trial court had no authority to dismiss the plaintiff's appeal as interlocutory, the Court noted: "Depending on our interpretation of the legal basis of the order [dismissing the plaintiff's appeal], we could either: (1) treat [the plaintiff's] appeal as an application for certiorari, grant same, and consider the merits; or (2) treat the order as in excess of authority and void *ab initio*, and consider the purported appeal, assuming the substantial right doctrine applies [to the interlocutory appeal], as properly before us." 70 N.C. App. at 640, 321 S.E.2d at 249 (internal citations omitted).

The Court held, however, that it was unable to treat the plaintiff's appeal as a petition for writ of certiorari because the plaintiff had already petitioned the Court for a writ of certiorari to review the order dismissing his appeal, a separate panel of the Court had previously denied that petition, and the *Estrada* Court was bound by the prior decision denying the petition to review the same order. *Id.* at 640-41, 321 S.E.2d at 249. The Court further held that although it could treat the order dismissing the appeal as void ab initio and consider the merits of the appeal, the appeal at issue was interlocutory and,

since a prior panel of the Court had also denied the plaintiff's separate petition for writ of certiorari to review the orders underlying the first appeal, the *Estrada* Court was unable to conclude that the appeal affected a substantial right. *Id.* at 641, 321 S.E.2d at 249. Consequently, the Court dismissed the plaintiff's appeal of the interlocutory orders. *Id.*

In this case, as in *Estrada*, NC WARN has already filed a petition for writ of certiorari in this Court seeking review of the Commission's order dismissing its first appeal. A separate panel of this Court has denied that petition. We may not, therefore, treat NC WARN's appeal as a petition for writ of certiorari and allow it in order to reach the merits of NC WARN's appeal from the underlying orders. There is no impediment, however, to our treating the Commission's order "as in excess of authority and void *ab initio*, and consider[ing] the purported appeal . . . as properly before us." *Id.* at 640, 321 S.E.2d at 249.

We, therefore, hold that the Commission's order dismissing NC WARN's first appeal is void ab initio and we treat NC WARN's first appeal, from the intervention order and settlement order, as properly before us. In light of our holding, we need not address the sufficiency of NC WARN's second appeal from the intervention order and the settlement order.

## II

We next address NC WARN's appeal from the order denying its motion to intervene.  We initially observe that NC WARN does not substantively challenge, in its brief, the Commission's order denying NC WARN's motion to intervene as of the time the order was entered.  Although NC WARN makes an unsupported assertion that "the Commission's denial of NC WARN's Motion to Intervene was improper because NC WARN had standing to participate in this case," that bare contention, without any supporting authority or argument, is insufficient to raise the issue of the merits of the intervention order at the time it was entered.  N.C.R. App. P. 28(b)(6).

Rather than arguing that the intervention order was erroneous when entered, NC WARN contends that the Commission's subsequent settlement order affected NC WARN, thereby giving rise to NC WARN's standing to intervene in this investigation docket.  Since NC WARN has abandoned its right to substantively challenge the intervention order, we affirm that order.

We now turn to NC WARN's argument that it had standing to intervene after entry of the settlement order.  The Commission's investigation in this case was an investigation pursuant to N.C. Gen. Stat. § 62-37, which provides:

> (a)  The Commission may, on its own motion and whenever it may be necessary in

> the performance of its duties, investigate and examine the condition and management of public utilities or of any particular public utility. In conducting such investigation the Commission may proceed either with or without a hearing as it may deem best, but shall make no order without affording the *parties affected* thereby notice and hearing.

(Emphasis added.)

NC WARN contends that it was a "party affected" by the Commission's settlement order because the settlement order "directly modified the underlying merger order in the merger docket" since it "goes outside the scope of investigation and attempts to . . . resolve matters in the merger dockets." NC WARN was a party to the merger docket, and it contends that it "cannot be a party affected in the merger dockets and somehow no longer affected when the merger order is modified in another docket."

We note that NC WARN never filed a second motion to intervene with the Commission, after entry of the settlement order, presenting the argument it now raises on appeal. However, NC WARN did argue in its first notice of appeal that the settlement order "approved a settlement agreement that had the intent and effect of significantly modifying the Commission's [merger order] in the other dockets relating to the merger of the two electric utilities . . . in which NC WARN was an intervening party." This is essentially the same basis upon

which NC WARN now contends that it had standing to intervene in this investigation.

In its order dismissing NC WARN's first appeal, the Commission determined that NC WARN was properly denied intervention and that "the Commission's order in this docket does not modify its order in the merger docket as NC WARN alleges." We assume, without deciding, that NC WARN's assertions in its first notice of appeal, and the Commission's ruling in its order dismissing that appeal, sufficiently preserve for appeal NC WARN's standing argument.

This Court addressed a similar standing issue in *CUCA*. There, the Commission and a South Carolina agency initiated a joint investigation of Duke Power under N.C. Gen. Stat. § 62-37 regarding accounting irregularities at Duke alleged by a whistleblower. *CUCA*, 163 N.C. App. at 2, 592 S.E.2d at 278. Carolina Utility Customers Association, Inc. ("CUCA"), an association representing many of North Carolina's largest industrial manufacturers, sought permission to "participate in" the investigation "to insure that the interests of its rate-paying manufacturers who may have suffered disproportionately from any excessive charges for electrical power were protected." *Id.*

The Commission denied CUCA's request to participate, and during the investigation it was determined that Duke had, through accounting practices, "'inappropriately reduced'" its "'pre-tax utility operating income'" for several years by millions of dollars. *Id.* at 3, 592 S.E.2d at 279. The Commission Staff and Duke then negotiated a settlement agreement whereby Duke would be required, among other things, to correct erroneous accounting entries, "'make a one-time $25 million credit in 2002 to its deferred fuel amounts in North Carolina and South Carolina . . . to be incorporated into the next fuel cost proceedings in the respective states[,]" implement certain remedial actions, and "'acknowledge and regret that communications with the two State Commissions failed to adequately detail significant changes to prior accounting practices[.]'" *Id.* at 4, 592 S.E.2d at 279.

The Commission held a staff conference to discuss the settlement agreement, and CUCA presented the Commission, at the conference, with a "motion requesting further investigation and hearing." *Id.* at 5, 592 S.E.2d at 279. The Commission denied CUCA's motion and voted unanimously to approve the settlement agreement, but the vote did not constitute a final order since the South Carolina agency had not yet approved the agreement. *Id.*, 592 S.E.2d at 279-80.

Prior to entry of a final order, CUCA and an individual ratepayer, Wells Eddleman, filed petitions to intervene and motions for further investigation and hearing. *Id.* at 2, 5, 592 S.E.2d at 278, 280. The Commission subsequently entered a final order granting CUCA and Eddleman's motions to intervene after concluding that "'as ratepayers, CUCA [and] Eddleman . . . are affected by the level of Duke's rates and have an interest in this matter.'" *Id.* at 5, 592 S.E.2d at 280. The Commission's order, however, denied the motions for further hearing and formally approved the settlement agreement. *Id.* On appeal, CUCA and Eddleman "raise[d] issues regarding the investigation of Duke and the Commission's subsequent order approving the settlement agreement resulting from that investigation." *Id.* at 6, 592 S.E.2d at 280. Duke, in turn, cross-appealed and argued that the Commission erred in granting CUCA and Eddleman intervention since they were not "'parties affected'" by the investigation. *Id.*

This Court in *CUCA* held that CUCA and Eddleman were not "'parties affected'" by the order and, therefore, had no standing to appeal the Commission's approval of the settlement agreement. *Id.* The Court first noted that "the investigation of Duke was conducted by the Commission pursuant to its powers and duties defined under Article 3 of our General Statutes,

particularly Section 62-37, and not pursuant to the Commission's judicial functions outlined in Article 4." *Id.* The Court observed that intervention under the Commission Procedural Rules was permitted as follows: "'Any person having an interest in the subject matter of any hearing or investigation pending before the Commission may become a party thereto and have the right to call and examine witnesses, cross-examine opposing witnesses, and be heard on all matters relative to the issues involved . . . .'" *Id.* at 7-8, 592 S.E.2d at 281 (quoting N.C.U.C. Rule R1-19(a)). The Commission had, therefore, "concluded that CUCA and Eddleman not only had an 'interest in the subject matter' but were also 'parties affected' by the order . . . ." *Id.* at 8, 592 S.E.2d at 281.

With respect to whether CUCA and Eddleman were "parties" to the investigation, the Court held that CUCA and Eddleman were not "parties" under N.C. Gen. Stat. § 62-37 until the Commission's final order granted their motion to intervene. 163 N.C. App. at 9, 592 S.E.2d at 282. The Court then addressed whether CUCA and Eddleman were parties "affected" by the order, and looked to a case interpreting the prior version of the statute providing a right to appeal the Commission's orders for "'any *party affected* thereby.'" *Id.* (quoting *In re Hous. Auth. of City of Charlotte*, 233 N.C. 649, 657, 65 S.E.2d 761, 767

(1951)).  The Court observed that "'party affected'" had been defined, under that statute, as follows: "'[A] party is not affected by a ruling of the Utilities Commission unless the decision affects or purports to affect some right or interest of a party to the controversy and [is] in some way determinative of some material question involved.'"  *Id.* (quoting *In re Hous. Auth.*, 233 N.C. at 657, 65 S.E.2d at 767).

Further, with respect to whether a party is "affected," the Court explained that the current appeals statute, which replaced the statute construed in *In re Housing Authority*, used the phrase "'party aggrieved'" instead of "'party affected.'"  163 N.C. App. at 10, 592 S.E.2d at 282 (quoting N.C. Gen. Stat. § 62-90(a) (2003)).  The Court observed that, generally, "'[a] "party aggrieved" is one whose rights have been directly and injuriously affected by the judgment entered . . . .'"  *Id.* (quoting *Hoisington v. ZT-Winston-Salem Assocs.*, 133 N.C. App. 485, 496, 516 S.E.2d 176, 184 (1999)).  In addition, "[t]his Court's interpretation of 'party aggrieved' as it relates to an appeal of an order by the Commission also suggests that more than a generalized interest in the subject matter is required." *Id.*

Applying those interpretations of "'party affected'" and "'party aggrieved'" to the facts before it, the Court in *CUCA* reasoned:

> Duke was the only party recognized by the Commission throughout the investigation, as well as the only party directly and substantially affected by any subsequent order arising therefrom in the sense envisioned by the statute. As such, only Duke was entitled to receive notice and hearing pursuant to Section 62-37 to protect its due process rights. *While CUCA and Eddleman may have had an interest in the matter, their interest was only generalized and unsubstantial -- not specific to them as individual Duke customers.*

*Id.*, 592 S.E.2d at 283 (emphasis added).

The Court also rejected CUCA and Eddleman's argument that there was no party in the investigation that adequately protected their interests. *Id.* at 11, 592 S.E.2d at 283. In fact, the Court pointed out, the Public Staff participated in the investigation and recommended approving the settlement agreement, and the Public Staff acts independently of the Commission and was created "'to represent [the interests of] the using and consuming public' in matters before the Commission." *Id.* (quoting N.C. Gen. Stat. § 62-15(b) (2003)).

The Court in *CUCA* concluded that while CUCA and Eddleman "may have had an interest in the matter sufficient for intervention in a hearing or investigation pending before the

Commission pursuant to Article 4, Article 3 requires the prospective interveners to also be 'parties affected' pursuant to Section 62-37." *Id.* at 11-12, 592 S.E.2d at 283-84. Since "approval of the settlement agreement only had a generalized and unsubstantial affect on CUCA and Eddleman, they were not 'parties affected[,]'" and the Commission abused its discretion in granting their petitions to intervene. *Id.* at 12, 592 S.E.2d at 284. Further, since CUCA and Eddleman had no standing to appeal from the Commission's final order, the Court affirmed the order. *Id.* at 6, 12, 592 S.E.2d at 280, 284.

Here, Duke was the only party investigated by the Commission and, as in *CUCA*, the investigation was pursuant to the Commission's Article 3 powers and not its Article 4 judicial power. Like CUCA, NC WARN is an organization of ratepayer members and sought to intervene in order to protect the financial interests of its members. In other words, NC WARN's interest was "only generalized and unsubstantial -- not specific to [it] as [an] individual Duke customer[]." *Id.* at 10, 592 S.E.2d at 283. And, as in *CUCA*, the Public Staff, the party protecting the interest of the consuming public, participated in the investigation and recommended the Commission adopt the settlement agreement. NC WARN's interest in this case is,

therefore, materially indistinguishable from the interests of the intervenors in *CUCA*.

NC WARN nonetheless tries to distinguish *CUCA* from the present case by arguing that here, unlike in *CUCA*, the settlement order modified the merger order and NC WARN, having already been a party to the merger docket, was therefore necessarily a party affected by the settlement order. In support of its argument, NC WARN relies upon the following specific provisions of the settlement agreement:

> C. Duke will guarantee that Duke's North Carolina retail ratepayers will receive an additional $25 million in fuel and fuel-related cost savings over and above the amount Duke is obligated to provide pursuant to the Merger Order.

> D. Duke will contribute an additional $5 million to workforce development and low-income assistance in North Carolina on top of the amount provided in the Merger Order.

NC WARN also points to the settlement agreement's statement that the parties "desire to resolve all matters and issues involved in the Commission's investigation and the Merger Dockets without further litigation and expense and to move forward in a positive manner." These provisions of the settlement agreement were summarized in the Commission's settlement order.

Based on the provisions highlighted by NC WARN, however, we believe that the settlement agreement does not modify the merger order but, by its own terms, requires Duke to comply with provisions that are "over and above" obligations placed on Duke in the merger order. While we acknowledge that the parties' assertion in the settlement agreement that they wanted to resolve "all matters and issues involved in the . . . Merger Dockets" unnecessarily blurred the otherwise clear distinction between the two proceedings, the parties' loose statement does not serve to alter the material terms of the settlement agreement highlighted by NC WARN. Based on the face of the agreement as to those terms, we cannot conclude that the settlement order modified the merger order.

Further, even assuming that the settlement order dealt with some of the same matters at issue in the merger order, *CUCA* makes clear that there are different requirements for intervention in an Article 4 judicial proceeding before the Commission and intervention in an Article 3 investigation before the Commission. While it appears that the Commission's Procedural Rules permit intervention by "'[a]ny person having an interest in the subject matter of any hearing'" before the Commission, *id.* at 7, 592 S.E.2d at 281 (quoting N.C.U.C. Rule R1-19(a)), the "party affected" standard under N.C. Gen. Stat. §

62-37(a) is higher and does not permit intervention by a party that merely has a "generalized and unsubstantial" interest in the matter, *CUCA*, 163 N.C. App. at 10, 592 S.E.2d at 283. Thus, under *CUCA*, even assuming NC WARN had an interest sufficient to intervene in the merger docket, a non-Article 3 proceeding, NC WARN's intervention in the merger docket does not show that it was a party affected for purposes of the investigation docket.

Under *CUCA*, we hold that NC WARN was properly denied intervention by the Commission and that the subsequent entry of the settlement order did not change NC WARN's status and make NC WARN a "party affected." Consequently, as in *CUCA*, NC WARN has no standing to appeal from the settlement order, and we affirm that order as well. In light of our disposition, we deny Duke's motion to dismiss the appeal.

Vacated in part; affirmed in part.

Judges BRYANT and CALABRIA concur.